Submitted on briefs July 12, reversed and remanded
September 6, 1957

## STANLEY, ADMISTRATOR *v.* MUELLER
315 P. 2d 125

Winslow & Winslow, Tillamook, for appellant.

Weiser & Bowles, and David W. Young, Portland, for respondent.

LUSK, J.

This suit was brought under the Declaratory Judgments Law. The court entered a decree favorable to the defendant, and the plaintiff has appealed.

The controversy is over the question of an alleged prenuptial agreement between the defendant, Emil Mueller, and his deceased wife, Esther M. Mueller. The plaintiff is the administrator with the will annexed of the estate of Esther M. Mueller, deceased. He alleged in his complaint, on information and belief, that prior to their marriage the deceased and the defendant entered into an agreement that upon the death of either party the survivor would not take or claim by inheritance or otherwise any part of the property of the other, and that, in violation of the agreement, the defendant had elected to take one-fourth of the personal property of the estate of the decedent in addition to curtesy as provided by ORS 113.050, 113.060. The court found that the agreement had not been established by competent evidence, and entered a declaration that the defendant was entitled to one-fourth of the personal property of the decedent but not to curtesy.

■ We do not reach the merits for we are of the opinion that the court was not authorized to enter a declaration because of a want of necessary parties. The point was made for the first time by the defendant in his brief in this court, but, as will be shown, that

is a matter of no consequence. The court could have raised the question on its own motion.

By her last will and testament Esther M. Mueller, deceased, left bequests to ten legatees. Seven of these total $18,000, and two are indefinite in amount. Oren D. Dunn, a foster son, was given $50 a month for five years and $75 a month for the remaining years of his life "as long as funds available." To Julia Dudley, mother of the deceased, the testatrix gave "50.00 each month as long as she lives, or $100.00 a month as long as she is sick and bedfast and $300.00 for funeral expenses."

The estate was appraised at $43,492.68, of which $35,230.04 represents the net amount owing at the time the appraisal was made on two contracts of sale of real property entered into by the decedent after her marriage to the defendant. The remaining assets are money in the bank and two "capital reserve certificates."

■ It is apparent that the legatees have a substantial interest which would be affected by any declaration the court might make. Indeed, the real controversy is between the legatees under the will and the defendant. The only interest of the plaintiff is in obtaining guidance in his administration of the estate as authorized by ORS 28.040 (b) and (c). The legatees were necessary parties, in our opinion, and without them the court was not authorized to proceed.

■ The question is controlled by ORS 28.110, which is identical with § 11 of the Uniform Declaratory Judgments Act in effect in most of the states, and reads in part:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and

no declaration shall prejudice the rights of persons not parties to the proceeding."

In our opinion the mandatory "shall" in this statute should be given its ordinary effect by the courts. We think that under this provision the courts have no authority to make a declaration unless all persons "who have or claim any interest which would be affected by the declaration" are parties to the proceeding. Otherwise, there is no "justiciable controversy" within the meaning of the statute.

It has been so held in a number of cases in other states. *Redick v. Peony Park*, 151 Neb 442, 37 NW2d 801, involved the validity of restrictive covenants in a contract between owners of lands. One Mach, an owner of a part of the lands covered by the contract, was not made a party defendant. On appeal the question of failure to make him a party was raised for the first time, and the court, in an opinion by Chief Justice Simmons, held that it was without jurisdiction. It was argued by the plaintiff that the objection had been waived because of the failure of the defendant to demur under a Nebraska statute, which, like ORS 16.330, provides in substance that the objection for defect of parties, if not taken either by demurrer or answer, shall be deemed to have been waived. But the court held that this provision, being general, must yield to the specific statutory provisions of the Declaratory Judgments Act. The court said:

"Section 25-21,159, R.S. 1943 [identical with ORS 28.110], puts the duty upon the plaintiffs in the first instance of joining as parties all persons who have or claim any interest which would be affected by the declaration. To insure that joinder it provides no declaration shall prejudice the rights of persons not parties to the proceedings, and likewise section 25-21,154, R.S. 1943, provides that

the court may refuse to render a declaratory judgment when to do so would not terminate the uncertainty or controversy giving rise to the proceeding.

"It is the established rule that 'The Declaratory Judgments Act is applicable only where there is a present actual controversy and all interested persons are made parties, and only where justiciable issues are presented.' Miller v. Stolinski, 149 Neb 679, 32 N.W.2d 199, 202. We have made application of the rule denying declaratory judgment in a number of decisions."

The court then reviewed its previous decisions on the subject, as well as decisions from other states, and continued:

"As above recited we have held that the presence of necessary parties was jurisdictional in this class of cases, and that is a matter which the parties cannot waive.

\* \* \* \* \*

"The record is clear that Mach is a party to the contract which plaintiffs seek to have construed and declared void. Mach owns land involved in the contract. A declaratory judgment by this court such as plaintiffs seek would be a precedent applicable to his rights and liabilities under the contract contrary to the statutory provision that no declaration shall prejudice the rights of persons not parties to the proceeding. Such a declaration, however, would not be res judicata as to him and would not terminate any uncertainty or controversy that he might wish to assert against either plaintiffs or defendant, or they against him. The absence of Mach as a party renders necessary a reversal of the judgment of the trial court and a denial of the declaratory judgment sought."

Among the decisions cited by the Nebraska court was *Conley v. Union County People's Utility District (Stringham et al. v. Union Co. P.U.D. et al.)*, 182 Or

565, 572, 578, 178 P2d 698, 187 P2d 150, in which this court declined to determine the effect of the provisions of a contract, one of the parties to which was not made a party to the suit. Speaking through Mr. Justice Belt, the court said: "Whatever we might say in reference to the contractual obligations of the parties thereunder would not be binding on 'Cal-Pac' [the omitted party]. Even the Declaratory Judgments Act has its limitations. The Act does not contemplate the adjudication of interest of a party over which the court has no jurisdiction."

*Brantley v. Brantley,* 258 Ala 367, 63 So2d 29, was a declaratory judgment proceeding brought by a surviving widow to have declared void an antenuptial agreement. The deceased left a will from which the plaintiff dissented, thus entitling her, in case the agreement should be held invalid, to all the personal property of the estate up to the value of $50,000. The executor and certain heirs were named as defendants, but the bill did not allege that those so named as heirs were all the heirs at law and next of kin of the decedent. A demurrer to the bill on that ground, among others, was overruled by the trial court, but on appeal the decree was reversed, the court saying that "Under the mandatory provisions of" § 11 of the Uniform Act "the legatees under the will and the heirs at law are necessary parties."

In *Holland v. Flinn,* 239 Ala 390, 195 So 265, a declaration was sought as to whether a conveyance by warranty deed purporting to pass a fee simple title did in fact convey such a title. The answer depended upon the construction of the terms of a will and the remaindermen named in the will had an interest in that question. They were not made parties, and the Supreme Court of Alabama on its own motion

reversed the decree of the court below and remanded the case for the purpose of having the necessary parties brought in. The court said that "This issue of title cannot be adjudicated without the presence of the adverse parties, the remaindermen named in the will"; that § 11 of the Uniform Act "required necessary parties to be brought in"; and "No matter what may be the wishes of the parties in court the courts will not entertain and render decrees, which, for want of necessary parties, cannot adjudicate the questions presented. This rule has been declared by many courts in cases under the Declaratory Judgment Law. Borchard Declaratory Judgments, p. 104 et seq.; Note: 87 A.L.R. 1244; *State ex rel. Mellott v. Wyandotte County*, 128 Kan. 516, 279 P. 1; *Perry v. Elizabethton*, 160 Tenn. 102, 22 S.W.2d 359."

In *In re Bridge's Estate*, 40 Wash2d 133, 241 P2d 439, the question was stated by the court as follows:

"Is a residuary legatee a necessary party to a proceeding by the executor for the construction of a will, the result of which might diminish the *quantum* of the estate passing to the residuary legatee?"

The proceeding was commenced by the executor filing a petition praying for a construction of the decedent's will. Certain legatees were made parties but the residuary legatee was not. Notwithstanding the failure to raise the question in the trial court, the Supreme Court on appeal held that the omission of the residuary legatee was fatal.

"It is apparent that, if any one or all of these legatees should be held ineligible to take under the will, the amount of his or their legacies would then become a part of the residuary estate and pass to the residuary legatee. Thus the Mary Bridge Hospital [the residuary legatee] had a sub-

stantial interest in this controversy adverse to that of the legatees."

The presence of the residuary legatee as a party was held to be essential whether the petition was considered under the general statute which provided that if "a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in," or under the Declaratory Judgments Act with its requirement that all persons "who have or claim any interest which would be affected by the declaration" shall be made parties.

To the same effect as the decisions above reviewed are *Ladner v. Siegel,* 294 Pa St 368, 372-373, 144 A 274; *Commonwealth v. Reeves,* 289 Ky 73, 157 SW2d 751; *Ezzell v. Exall,* 207 Ky 615, 269 SW 752; *Givner v. Cohen,* 208 Md 23, 116 A2d 357; *United Slate, etc., Ass'n Local No. 80 v. United Brotherhood, etc., Local No. 101,* 185 Md 32, 42 A2d 913; *Wright v. Nashville Gas & Heating Co.,* 183 Tenn 594, 194 SW2d 459. See, also, Borchard, Declaratory Judgments (2d ed) 272; 26 CJS 281, Declaratory Judgments, § 122.

Apparently, the only case in which this court has expressly considered the effect of ORS 28.110 is *City of Salem v. O.-W. Water Serv. Co.,* 144 Or 93, 23 P2d 539, a suit to obtain a declaration as to the validity of a charter amendment authorizing the city to issue bonds for the purpose of providing funds with which to acquire a municipal water plant. The defendant, owner of the plant, contended that all the taxpayers of the city were necessary parties. The court said that "the controversy between the water company and the city is different from that between the city and those who own property within its boundaries"; that,

for all that was disclosed by the record, every taxpayer in the city favored the city's proposed course of action and "the taxpayers will be directly affected only in the event that a tax is levied for the benefit of the water plant." 144 Or at 98-99. It was held that the taxpayers were not necessary parties, the precise ground of the decision being that they did not "have or claim any interest which would be affected by the declaration." The case is not authority for sustaining jurisdiction here.

█■ A different interpretation of the statute was adopted in *State v. Brennan,* 231 Ind 492, 109 NE2d 409, where the word "shall" in § 11 of the Uniform Act was construed to mean "may." See, also, *Morton v. Pacific Construction Co.,* 36 Ariz 97, 283 P 281. But in our judgment (contrary to the view taken by the Indiana court) the second part of the first sentence of the section, "and no declaration shall prejudice the rights of persons not parties to the proceeding," emphasizes the mandatory meaning of the word "shall" in the first part; for, as the court pointed out in *Redick v. Peony Park,* supra, in speaking of the absent party in that case, "A declaratory judgment by this court such as plaintiffs seek would be a precedent applicable to his rights and liabilities under the contract contrary to the statutory provision that no declaration shall prejudice the rights of persons not parties to the proceeding." And Professor Borchard says:

> "The absence of parties the court deems necessary to this tranquillizing function would thus cause the declaratory action to fail of its purpose, so that the court is likely to dismiss without prejudice an action in which necessary parties have failed of joinder. Besides, it might prejudice the interests of the absent parties, a prejudice which Section 11

of the Uniform Act, codifying the common law, prohibits." Borchard, op. cit. 256.

It is elementary that "shall" connotes the imperative; and, while there are numerous instances in which "shall" in a statute is interpreted as "may," (see, e.g., *Childs v. Marion County,* 163 Or 411, 414-415, 97 P2d 955) just as "may" is frequently interpreted as "shall," yet generally, as many decisions illustrate, "The intention of the legislature as to the mandatory or directory nature of a particular statutory provision is determined primarily from the language thereof. Words or phrases which are generally regarded as making a provision mandatory, include 'shall,' and 'must.'" 50 Am Jur 49, Statutes § 28. See, also, 2 Sutherland, Statutory Construction 216, § 2803. The following statements of the law upon this subject by the editors of American Jurisprudence are, we believe, generally accepted as correct:

"* * * statutory provisions which relate to matters of substance, affect substantial rights, and are the very essence of the thing required to be done, are regarded as mandatory." 50 Am Jur 48, Statutes § 25.

"* * * The courts are, however, reluctant to contravene or construe away terms of a statute which in themselves are mandatory, except where the intent and purpose of the legislature are plain and unambiguous and clearly signify a contrary construction. Moreover, if any right to anyone depends on giving the word an imperative construction, the presumption is that the word was used in reference to such right or benefit." Idem, 54 § 32.

The "tranquillizing function" to which Professor Borchard referred is given expression to in ORS 28.120, which reads:

"This chapter is declared to be remedial; its

purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered."

■ Where the rights of parties with an interest are left undertermined the uncertainty and insecurity will remain and "courts properly decline to make declarations between parties when others, not bound, might later raise the identical question and deprive the declaration of that final and pacifying function it is calculated to subserve." Borchard op. cit. at 256-257.

■ We find nothing in the Declaratory Judgments Act, considered in its entirety and in the light of its expressed purpose, which warrants us in adopting a construction contrary to the mandatory language of ORS 28.110. And, since it is clear that the section was intended to protect the rights of all parties having or claiming an interest which would be affected by the declaration sought, we are satisfied that an imperative construction is the only admissible one.

■ ORS 13.030, which authorizes an executor or administrator, a trustee of an express trust, or a person expressly authorized to sue by statute, to sue without joining with him the person for whose benefit the action or suit is prosecuted, is not applicable to a case like this which involves the relations of the beneficiaries of an estate among themselves. See *Mitau v. Roddan,* 149 Cal 1, 84 P 145, 6 LRA (ns) 275, in which the court construed an identical statute of California in its application to a suit by the trustee of an express trust. In respect of the present question the case is like a proceeding instituted by an executor to construe a will. In *In re Bridges' Estate,* supra, 40 Wash2d at 135-136, a similar statute was held not to govern such a proceeding because it "is not prosecuted

for the benefit of any particular person" and is "in effect, against all the persons to be affected by the construction of the will."

■ It is our conclusion that the legatees under the will of Esther M. Mueller, deceased, are necessary parties to this proceeding and that the circuit court, for that reason, had no authority under the Declaratory Judgments Act to enter a decree declaring the rights of the parties. The objection was not and could not be waived by failure to raise the question by demurrer or answer. The decree must, therefore, be reversed and the cause remanded to the circuit court with directions to fix a time within which the legatees may be made parties. If they are not brought in within the time so to be fixed a decree of dismissal should be entered. No costs or disbursements will be allowed.

Reversed and remanded.

Mr. Justice KESTER took no part in the consideration or decision of this case.