Argued October 26, affirmed October 29, 1976

# JEWETT et al, *Appellants,*
## *v.*
# YERKOVICH et al, *Respondents.*

(No. A76-09-12444, CA 7005)

555 P2d 950

*John R. Faust, Jr.,* Portland, argued the cause for appellants. With him on the brief was Hardy, Buttler, McEwen, Weiss & Newman, Portland.

*Thomas R. Williams,* Deputy City Attorney, Portland, argued the cause for respondents. With him on the brief was John W. Osburn, City Attorney, Portland.

*James Scudder,* Portland, argued the cause and filed the brief for intervenor.

Before Fort, Presiding Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

This is an appeal by plaintiffs from a judgment of the circuit court denying declaratory and injunctive relief. Plaintiffs are shareholders of Pacific Power and Light Company (PP&L) and electors of the city of Portland. They seek to enjoin a city-wide election on a ballot measure which would direct the City of Portland to exercise its option to acquire PP&L's properties used in furnishing electricity and steam to its customers within the city.

PP&L operates under a nonexclusive twenty-year franchise granted by Portland City Ordinance No. 123160. That ordinance also reserves to the city an option to purchase the utility's plant and equipment and sets forth in detail the manner in which that option is to be exercised.

The franchise ordinance provides that acquisition may be initiated upon six-months' notice from the city council to PP&L. When such notice is given, the value of the assets to be acquired is to be fixed through arbitration. This valuation procedure does not obligate the city to consummate the acquisition but it conclusively establishes the price at which it may elect to do so. Before the city may effect the takeover, the question of whether it shall do so must be submitted to the electorate and approved by a majority of those voting on the matter.

The ordinance further provides that, with or without notice, the question of whether the city shall acquire PP&L's assets must be submitted to the electorate whenever a petition signed by 15 percent of the voters is filed with the city auditor. The form of the petition must comply with the requirements for an initiative petition as contained in the charter and ordinances of the city.

In November, 1975, five organizations began circulating a petition to have the measure here chal-

lenged placed on the 1976 general election ballot. The measure provides:

"The City of Portland by this Ordinance exercises its option to purchase Pacific Power and Light Company's plant and equipment serving the Portland area pursuant to the terms and provisions of Ordinance No. 123160 passed by the City Council on August 10, 1966 and approved by the voters on November 8, 1966. Following receipt of Bonneville Power Administration Service Contract commitment, Notice of the action shall be sent by the Auditor of the City of Portland to Pacific Power and Light Company notifying it that this option is being exercised. The City Attorney of the City of Portland and other city officials are directed to take such steps as are necessary to carry out this purchase of Pacific Power and Light Company Plant, and operate as a municipal system. Transfer is to be resolved equitably. Said purchase of Pacific Power and Light Company shall be solely by revenue bonds."

The proponent organizations periodically filed collected signatures with the city auditor for verification. By August 2, 1976, the requisite number of signatures had been collected, filed and verified. The deadline for filing and verification was August 14.[1] By letter dated August 4, the city auditor informed the initiative's proponents that sufficient signatures had been verified, that no more signatures needed to be filed, and that the matter would be placed on the November ballot. On August 13, the proponents filed a statement of contributions and expenditures reflecting unitemized contributions of less than $50 in a total sum of $205.50 and no single expenditure exceeding $50.

Plaintiffs contend that this measure does not arise

---

[1]Portland City Code § 2.04.150(f) provides in pertinent part:

"Initiative and referendum petitions shall be presented to the auditor in sufficient time so that verification of signatures may be completed not later than the eighty-first day before the election at which the proposed ordinance or amendments are to be submitted or referred to the voters. * * *"

The statement of contributions and expenditures discussed herein was submitted on the 82nd day before the election.

under the initiative procedure which is specifically authorized by the franchise ordinance because its mandatory terms regarding purchase, financing and operation go beyond the provisions of the franchise ordinance. Therefore, plaintiffs assert, it must satisfy the standards established for constitutional initiatives proposed pursuant to Article IV, Section 1 of the Oregon Constitution, and it fails to do so, they argue, because it is administrative rather than legislative. *See Amalgamated Transit Union v. Yerkovich,* 24 Or App 221, 545 P2d 1401, *rev den* (1976), and *Monahan v. Funk,* 137 Or 580, 3 P2d 778 (1931). Defendants respond that the measure is roughly parallel to the ordinance and capable of being harmonized with the ordinance if necessary after voter approval.

■ We conclude that the measure is brought as it expressly purports to be, "pursuant to the terms and provisions of Ordinance No. 123160," which requires submission to the voters of the question of acquisition upon filing of a completed petition. Since the measure submits the question of authorization to the people as a triggering mechanism under preexisting ordinance, then, as acknowledged at oral argument, it is not to be judged by the administrative-or-legislative test applicable to initiative measures.

The claimed inconsistencies as to purchase, finance and operation do not weaken our conclusion. We need not and do not resolve them at this time, although the concurring opinion assumes otherwise. If the measure is enacted, objections that its content is unconstitutional, inconsistent with the franchise ordinance or otherwise invalid may then be litigated. In that event and at that time, ORS 28.110, upon which our concurring brother relies, may become applicable. The question we now decide is whether the auditor is to place the measure on the ballot for a vote of the people, not whether the measure is capable of harmonization with the ordinance under which it is brought. *Unlimited Progress v. Portland,* 213 Or 193, 324 P2d 239 (1958).

Plaintiffs also assert that the proponents failed to timely file their contribution and expenditure statement and that the measure must therefore be removed from the ballot under ORS 254.600 which provides:

"(1) The sponsors of any initiative or referendum petition, at the time of filing their completed petition, shall file with it a statement showing the contributions and expenditures for the petition. This statement shall conform to the requirements of ORS 260.162.

"(2) If such verified statement is not filed as required by this section, the Secretary of State shall not place the measure petitioned for on the official ballot."

Other laws make this requirement applicable to city-wide elections in Portland and make the direction to the Secretary of State applicable to the city auditor.[2] Plaintiffs argue that a literal application of this statute requires that if a contribution and expenditure statement is not filed simultaneously with the completed petition, the city auditor may not place the measure on the ballot and if he does so the courts must direct its removal.

Since the franchise ordinance requires that the measure conform in form to the legal requirements for initiative measures, and because both parties assume

_____

[2]Charter of the City of Portland, ch III, art I, § 3-111 provides:

"The provisions of this charter and ordinances passed by the council to implement the same or to provide procedure where this charter is silent relating to the manner of voting, the duties of electing officers, the canvassing of returns, and all other provisions with respect to the management of elections, where applicable, shall apply to all municipal elections, except insofar as the same are in conflict with the constitution and mandatory general laws of Oregon in force at the time of any election, in which case the provisions of the constitution and mandatory general laws shall control. If this charter and ordinance provisions of the city are both silent concerning any particular procedure, then the general state law shall apply. The powers conferred and duties imposed by the constitution and general laws upon state and county officers are hereby conferred and imposed upon the corresponding city officers, where applicable under the provisions of this charter. * * *"

Nothing in chapter III of the Portland City Charter or in chapter 2.04 of the Portland City Code relating to initiative and referendum procedures purports to vary the provisions of ORS 254.600 and ORS 260.162 regarding the reporting of contributions and expenditures.

ORS 254.600 to be applicable to this measure, we assume for purposes of this decision, but without so deciding, that the statute is applicable.

■ ORS 254.600 seeks to assure the integrity of the constitutional initiative process. Accordingly, it should be liberally construed in order to facilitate rather than hamper that process, *State v. Mack,* 134 Or 67, 292 P 306 (1930), consistent with the accomplishment of the legislative purpose. The Supreme Court has consistently refused to strike an otherwise valid initiative because of technical noncompliance with statutory requirements. It most recently stated the test in *Lindstrom v. Myers,* 273 Or 46, 56, 539 P2d 1049 (1975):

"* * * [T]he challenge here was commenced prior to the election, which is an important consideration. However, invalidation of an election is a severe sanction and should not be lightly undertaken. It is a matter of balancing the seriousness of the defect against the consequences of invalidation. Before the electorate will be disfranchised by anyone's failure to comply with the statute, the failure must be one of considerable magnitude which threatens the purity of the ballot. * * *"

*See also, Miles et al. v. Veatch, et al.,* 189 Or 506, 220 P2d 511, 220 P2d 905 (1950), *State ex rel v. Snell,* 168 Or 153, 121 P2d 930 (1942).

■ ORS 254.600 was enacted to insure that the manner in which campaign funds are received and expended will be disclosed to public officials who will thus be apprised of improprieties which require remedial action. The measure also serves to make such information available to the electorate to aid in the informed exercise of their franchise. By requiring that the contribution and expenditure statement be filed with the completed petition, the statute assures that this information will be available at a time when it will effectively serve these purposes.

■ Because in this case the proponents filed signatures with the city auditor at his request in periodic batches

in order to ease his burden of verification, it is conceptually difficult to determine a precise moment when the contribution and expenditure statement should have been filed in order for its filing to be deemed simultaneous with the filing of the completed petition. As a practical matter, the initiative's proponents could not have known with certainty that the statement was due until they were notified by the auditor that the requisite number of signatures had been verified and that no more need be filed. The filing of the statement was on August 13, 11 days after the last batch filing, nine days after the letter of notice was mailed and one day prior to the deadline within which signatures could still have been filed with an accompanying financial statement. Moreover, the statement was filed sufficiently in advance of the election that the need for timeliness which underlies the simultaneous filing requirement was satisfied. Under these circumstances, we hold that any noncompliance with ORS 254.600 which may have occurred is not sufficient to justify invalidation of the balloting process.

An intervenor has filed a brief challenging plaintiffs' position on other grounds, but since he has filed no notice of appeal we do not consider his contentions.

Affirmed.

**FORT, J.,** concurring.

I concur with that portion of the majority opinion which holds that the statement of contributions required by the ordinance was timely filed within the intendment of ORS 254.600. For the reasons hereinafter stated, I would not reach the remaining issues.

ORS 28.100 provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the valid-

ity of a municipal charter, ordinance or franchise, the municipality affected shall be made a party, and shall be entitled to be heard, and if the constitution, statute, charter, ordinance or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard."

This declaratory judgment proceeding does not join as a party Pacific Power and Light Company, the franchise holder and owner and operator of all properties affected by either Ordinance 123160 or the proposed initiative ordinance. Likewise this proceeding does not join as parties either the City of Portland, its mayor, or any of its duly elected governing board. It thus presents no opportunity to those persons, individual or corporate, who are the principal parties who "would be affected by the declaration" sought, to be heard; nor would any declaratory judgment issued be binding on any of them, nor constitute "the law of the case" in future litigation. *Huszar v. Certified Realty Co.,* 272 Or 517, 538 P2d 57 (1975); *Koch v. So. Pac. Transp. Co.,* 274 Or 499, 547 P2d 589 (1976); *Morley v. Morley,* 24 Or App 777, 547 P2d 636 (1976).

ORS 28.060 provides:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

In *Unlimited Progress v. Portland,* 213 Or 193, 324 P2d 239 (1958), our Supreme Court, in a suit to enjoin city officials from placing an initiative measure on the ballot, said:

"It is not necessary for us to consider the constitutional validity of the proposed measure as attacked in plaintiffs' complaint. It may be that should this measure receive the approval of a majority of the voters in the city of Portland the reasons for invalidity of the measure set forth in plaintiffs' complaint would void its enforcement. However, if a proposed measure is legally sufficient in that all the provisions of the law relating to initiative measures have been formally complied with so

that the measure, regardless of the legality of the subject matter and substance contained therein, will require an administrative official to place it upon the ballot for consideration of the voters, the courts will not interfere with the attempt to enact the measure. It is only after the proposed measure is enacted that the courts have power to declare the measure ineffectual in law. Such is the established law of this state governing initiative measures proposed by the people of the state when acting in full compliance with the legal requirements of the initiative provisions of the constitution and laws of the state. *State ex rel. v. Newbry et al.,* 189 Or 691, 222 P2d 737; *State ex rel. Carson v. Kozer,* 126 Or 641, 270 P 513.

"We are of the opinion this rule of law applies with equal propriety and force to municipal measures." 213 Or at 195-96.

In *O.S.E.A. v. Holman,* 4 Or App 320, 478 P2d 657 (1971), we considered at length the propriety under the Declaratory Judgment Act of entering a judgment in the absence of joinder of proper parties, and said:

"Concerning declaratory judgment actions, ORS 28.110 provides:

" 'When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration * * *.'

"In conformity with elementary concepts of due process, the statute continues:

" '* * * [A]nd no declaration shall prejudice the rights of persons not parties to the proceeding. * * *'

"The Oregon Supreme Court, in a carefully considered opinion, held in *Stanley, Adm. v. Mueller,* 211 Or 198, 315 P2d 125, 71 ALR2d 715 (1957), a declaratory judgment proceeding:

" 'We do not reach the merits for we are of the opinion that the court was not authorized to enter a declaration because of a want of necessary parties. The point was made for the first time by the defendant in his brief in this court, but, as will be shown, that is a matter of no consequence. The court could have raised the question on its own motion.

" '* * * * * *

" 'The question is controlled by ORS 28.110, which

is identical with § 11 of the Uniform Declaratory Judgments Act in effect in most of the states, and reads in part:

" ' "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." '

" 'In our opinion the mandatory "shall" in this statute should be given its ordinary effect by the courts. We think that under this provision the courts have no authority to make a declaration unless all persons "who have or claim any interest which would be affected by the declaration" are parties to the proceeding. Otherwise, there is no "justiciable controversy" within the meaning of the statute.' 211 Or at 200-202.

"It concluded its lengthy analysis of the authorities in the following language:

" 'Where the rights of parties with an interest are left undetermined the uncertainty and insecurity will remain and "courts properly decline to make declarations between parties when others, not bound, might later raise the identical question and deprive the declaration of that final and pacifying function it is calculated to subserve." Borchard op. cit. at 256-257.

" 'We find nothing in the Declaratory Judgments Act, considered in its entirety and in the light of its expressed purpose, which warrants us in adopting a construction contrary to the mandatory language of ORS 28.110. And since it is clear that the section was intended to protect the rights of all parties having or claiming an interest which would be affected by the declaration sought, we are satisfied that an imperative construction is the only admissible one.

" '* * * * *

" '* * * The objection was not and could not be waived by failure to raise the question by demurrer or answer. * * *' 211 Or at 209-10.

"More recently, the Supreme Court expressly reaffirmed that holding. *Stearns v. Commission of Public Docks,* 240 Or 255, 401 P2d 25 (1965). See also, 2 Oregon Civil Pleading and Practice, § 85.19-20 (CLE 1969);

Borchard, Declaratory Judgments 255-58 (2d ed 1941)."
4 Or App at 323-25.

Because of the absence there of a necessary party, we also said:

> "We are of the opinion that Prophet Foods Company, a Michigan corporation, is a necessary party to this case. *Accordingly, we do not reach the questions herein sought to be raised.*" (Emphasis supplied.) 4 Or App at 323.

In my opinion because of ORS 28.110 and 28.060 we should, based on the foregoing reasoning and authorities, decline to consider the remaining merits urged in this action. As does the majority, however, I would affirm the order dismissing the proceeding.