Submitted on briefs September 19, reversed and remanded October
10, 1922.

## HOGAN *v.* OLCOTT ET AL.

### (209 Pac. 611.)

**Bounties—Loan to World War Veteran Could not be Refused Because Security was Real Estate of His Mother, or Because of Intended Use of Proceeds.**

In view of Constitution, Article XI–c (see Laws Sp. Sess. 1921, p. 5), as to state aid to World War veterans by bonus or loan, and Laws of 1921, Chapter 201, providing in Section 10 that the real property mortgaged as security for the loan shall be owned by the applicant, his or her husband, father, mother, child, children, brother or sister in the order named, the power given the World War Veterans' State Aid Commission to prescribe rules and regulations to carry out the purposes of the act did not authorize the commission, by virtue of rules and regulations adopted by it or otherwise, to refuse an application for a loan to be secured by a mortgage on land owned by applicant's widowed mother, either on the ground that the title of the land was not in him or that his purpose was to use the proceeds of the loan to pay an existing mortgage on such property.

From Marion: PERCY R. KELLY and GEORGE G. BINGHAM, Judges.

In Banc.

The plaintiff, Cicero F. Hogan, appeals from a judgment dismissing an alternative writ of *mandamus* issued upon his petition by the Circuit Court for Marion County. From the allegations of the writ it appears, and it is admitted by the answer, that the plaintiff is a veteran of the World War, and was inducted into the military service of the United States on April 6, 1917, and at that time was a citizen and resident of this state, and that he served in active service until June 3, 1920, when he was honorably discharged from such service. All of the other facts necessary to show that the plaintiff possesses all of the qualifications entitling him to elect whether he shall be paid a cash bonus or shall be entitled to a

loan under the provisions of Chapter 201, Laws of 1921, and Article XI–c of the state Constitution are alleged in the writ, and admitted by the answer.

The controversy arises upon the issue made by the following allegations: The writ alleges that "said petitioner has elected to receive the benefits of the loan provisions of said act, and has offered as security therefor real estate of great value, to wit, $8,000, which said property bears substantial improvements, the legal title to which is held by Ellen A. Hogan, a widow, and mother of your petitioner, who has joined in said application as by law required."

The affirmative defense alleged in the answer is "that it is the avowed intention of petitioner to use the money derived from said loan for the payment of a mortgage now existing on the property which he offers as collateral for the loan, the title to which is in the mother, Ellen A. Hogan, same being located at 629 East Fifteenth Street, North, Portland, Oregon. That in the administration of Chapter 201, General Laws of Oregon, 1921, the World War Veterans' State Aid Commission has limited the benefits of the act to relatives of deceased veterans who would have been qualified to receive the bonus or loan under the provisions of said act. That said commission has refused in all cases and refuses in this case to make a loan to or for the benefit of a relative of a veteran who himself joins in the application for the loan and where he has no interest or legal title to the property upon which the present mortgage, which is proposed to be paid from the funds derived from the loan, exists."

A demurrer to the answer was overruled, and the judgment appealed from was entered.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Wilson & Guthrie, Mr. Cicero F. Hogan* and *Mr. MacCormac Snow.*

For respondents there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. J. A. Benjamin,* Assistant Attorney General.

RAND, J.—Article XI–c conferred upon the plaintiff the alternative right either to demand and receive a cash bonus, or to accept a loan, as he might elect. The only definition to be found in Article XI–c of the right to demand and receive a loan is contained in the words "shall be entitled to borrow from said funds not to exceed $4,000, which loan shall be secured by a mortgage upon real estate in an amount not exceeding 75 per cent of the appraised value of said real estate, but which loan may be reduced by statute." The amount is reduced by statute to $3,000. The provision above quoted is not self-executing. The right created by this provision of the Constitution is that the applicant, if qualified, may borrow any amount not in excess of $3,000 upon giving as security for its payment a mortgage upon real estate in an amount not exceeding 75 per cent of its appraised value. To enjoy the right, and to safeguard the interests of the state, it was necessary for the legislature to provide for the appraisement of the real property offered as security for the loan; to determine upon what real property a mortgage would be accepted; the kind and character of title and who the holder of such title should be, and other similar questions. This, of necessity, conferred upon the legislature a wide latitude of discretion. The only limitation upon its lawmaking power was that in the exercise of such power

it should not so obstruct, limit or restrict the exercise by any qualified applicant of his right, as to constitute an unreasonable or undue interference with such right.

The legislature could not, under the guise of legislation, deny, destroy or impair such right, but it was its duty to properly safeguard the interests of the state, and it was within its power to enact any law to carry out the constitutional provision so long as in the operation of such laws, the right created by the Constitution was recognized, protected and secured. It was therefore within the power of the legislature to enact the provision contained in Section 10 of Chapter 201, that "a loan to any person hereunder shall not exceed $3,000 in amount, and loans shall be made only when secured by a mortgage which is a first lien upon real property located within the State of Oregon, and owned by the person securing such loan, his or her husband, father, mother, child, children, brother or sister in the order named," etc.

The title to the land involved is vested in the mother of the applicant. The father is dead. The mother is therefore the relative named in the statute whose property may be given by the applicant as security for the loan.

The World War Veterans' State Aid Commission was created by and organized pursuant to the provisions of Chapter 201, and was charged with the duty of administering said act. The commission is authorized and empowered to prescribe rules and regulations to carry out the purposes of the act, and it has the power expressly granted to it by Section 20 of the act "to do any act or thing necessary to fully meet the requirements of this act," but it can exercise no legislative power except the limited powers dele-

gated to it by the act itself, which, as stated in the act, are to adopt all necessary rules and regulations not inconsistent herewith to carry into effect such provisions.

The rule mentioned and referred to in defendants' answer, if permitted to stand, would render the provisions of Section 10 of said act above quoted nugatory. The commission had no such power, and the enforcement by the commission of the rule referred to in the answer, operating as it did to deny and destroy the right conferred upon the applicant was unauthorized and beyond the power of the commission.

It was not within the power of the commission to deprive the plaintiff of his right to use the real estate of his mother as security for the loan, nor was it within the power of the commission to limit the applicant's right to dispose of the money after it had been borrowed. The case was not one coming within the provisions of Section 22 of the act, and therefore the provisions of that section have no application to this case.

The judgment entered in the court below will be reversed, and the cause remanded for such further proceedings as are not inconsistent herewith, and it is so ordered.                    REVERSED AND REMANDED.